# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CITY OF HUNTINGTON,**
**Employer Below, Petitioner**

**FILED**
**September 26, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-202**          (JCN: 2022019151)

**STEVEN STREETS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner City of Huntington ("City") appeals the April 20, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Steven K. Streets filed a response.[1] City filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and holding the claim compensable for a left shoulder rotator cuff tear and whether the Board erred in granting Mr. Streets' motion to untimely file his protest.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 24, 2022, Mr. Streets presented to Jessica Carmichael, M.D., reporting that he had been raking gravel while at work the day before when he felt a pop in his shoulder. Mr. Streets stated that, since the incident, he had pain in his left shoulder that radiated into his shoulder blade and neck. Dr. Carmichael diagnosed a left shoulder strain.

On March 25, 2022, Mr. Streets was treated by Allen Young, M.D., at St. Mary's Occupational Medicine. Mr. Streets again reported feeling a pop in his left shoulder while he was raking gravel at work and that he had experienced pain thereafter. Dr. Young noted no prior history of significant issues with the left shoulder and diagnosed Mr. Streets with a neck sprain and a left shoulder sprain. Dr. Young assisted Mr. Streets in completing an Employees' and Physicians' Report of Occupational Injury form, and the physician's section contained a diagnosis of neck and left shoulder sprain/strain.

---

[1] City is represented by Scott K. Sheets, Esq. Mr. Streets is represented by Edwin H. Pancake, Esq.

Mr. Streets returned to see Dr. Young on March 30, 2022, with complaints of worsening pain and decreased range of motion. Dr. Young suspected a rotator cuff issue and requested an MRI of the left shoulder, a referral to an orthopedist, and physical therapy. On April 11, 2022, Mr. Streets followed up with Dr. Young, who noted that his recommendations for an MRI, physical therapy, and a referral to an orthopedist had not yet been approved. Dr. Young reiterated these recommendations, stating that he suspected a rotator cuff tear. Dr. Young continued Mr. Streets on modified work duties. The same recommendations were made at an appointment on April 25, 2022, as well.

By order dated May 3, 2022, the claim administrator denied the claim. On June 22, 2022, Mr. Streets underwent an MRI of the left shoulder, which revealed full thickness tears involving the supraspinatus and infraspinatus tendons. The imaging report noted remarkable atrophy within the infraspinatus and mild atrophy and subtle increased signal within the supraspinatus with prominent retraction of both tendons.

Thomas J. O'Brien, M.D., an orthopedic surgery specialist, performed a utilization review of Mr. Streets' claim. In his report, Dr. O'Brien referenced several medical records dated prior to the work-related injury, including two that indicated injuries to Mr. Streets' left shoulder. First, records from December of 2020 indicated that Mr. Streets fell over a concrete wall while at work and injured his left shoulder and upper back. Second, a record from December of 2021 indicated that Mr. Streets presented to the emergency room ("ER") with complaints of left shoulder pain after falling on his arm. According to Dr. O'Brien's report, these records indicated that ER staff stated that Mr. Streets "may have torn his rotator cuff." Dr. O'Brien also referenced a medical record from February of 2022, wherein Mr. Streets indicated that he had no pain in his left shoulder, that his symptoms had resolved, and that he had full passive range of motion.

Dr. O'Brien opined that Mr. Streets did not sustain a traumatic rotator cuff tear as a result of his work activities and that, rather, the tear was attributable to chronic preexisting degenerative arthritis. According to Dr. O'Brien, the MRI reports showed chronic degenerative arthritis of the acromioclavicular joint and a chronic-appearing retracted rotator cuff tear with fatty atrophy of the rotator cuff muscles. Dr. O'Brien opined these findings indicate that the rotator cuff tear predated the alleged injury by years.[2]

_____

[2] Also submitted before the Board was a document by Darlene Burns, RN. The Board included a distinct finding of fact related to or based on Ms. Burns' correspondence, noting that she opined that Mr. Streets had not sustained a traumatic rotator cuff tear. However, upon close inspection, it appears that Ms. Burns' correspondence is simply a letter forwarding Dr. O'Brien's report. Ms. Burns' letter appears to contain a verbatim recitation of Dr. O'Brien's report and, in fact, states at the beginning of her letter that "Our Review Physician, Thomas J. O'Brien, M.D., . . . has reviewed this case. His letter is attached for your review." As such, it appears that Ms. Burns' letter is not a distinct, additional letter providing an opinion as to the causality of Mr. Streets' diagnosis.

On June 30, 2022, Jarrod Smith, M.D., authored a letter indicating that he had seen Mr. Streets for a visit in February of 2022, and that Mr. Streets had been doing well at that time. Dr. Smith stated it was his professional opinion that Mr. Streets' work-related injury "caused significant dysfunction of his left shoulder." Dr. Smith opined that, if the rotator cuff tear had been chronic, the MRI would have shown "much more atrophy" and that the MRI findings were consistent with an acute work-related injury.

On August 16, 2022, counsel for Mr. Streets filed a motion before the Board requesting permission to untimely file a protest of the claim administrator's order. Counsel noted that he was newly retained and had not received a copy of the claim file from the claim administrator. By order dated September 9, 2022, the Board granted the motion to allow the late filing.

Mr. Sheets testified via deposition in January of 2023. Mr. Sheets described his actions and mechanism of injury on the date of the alleged injury. Mr. Sheets admitted that he had previously fallen in December of 2021 due to a diabetic episode and strained his left shoulder. Mr. Streets explained that he was in the hospital for six days following that fall and then subsequently contracted COVID-19, which forced him to rest at home. As a result of these periods of rest, Mr. Streets regained full mobility without pain in his left shoulder. Mr. Streets stated that, otherwise, he had no problems with his left shoulder prior to his work-related injury.

By order dated April 20, 2023, the Board reversed the claim administrator's order and held the claim compensable for a left shoulder rotator cuff tear. Citing to *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) and *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), the Board found that the evidence failed to establish that Mr. Streets' left shoulder rotator cuff tear preexisted the work-related injury. The Board noted that, though Mr. Streets stated he previously injured his left shoulder in December of 2021, he subsequently regained full mobility and had no pain by February of 2022. The Board also noted that Mr. Streets continued his regular work duties until he felt a pop in his left shoulder while raking gravel at his job. Further, Dr. Smith opined that the MRI and exam findings were consistent with an acute work-related injury, and he had the advantage of examining Mr. Streets both before and after the work-related injury. In contrast, the Board noted, Dr. O'Brien had not examined Mr. Streets. As such, the Board concluded that the evidence did not establish that Mr. Streets had a preexisting diagnosis of a left rotator cuff tear and held the claim compensable.[3] City now appeals.

---

[3] We note that the Board made a problematic finding in its order holding the claim compensable for a left shoulder rotator cuff tear. Specifically, the Board found that "[e]ven if the claimant had a preexisting left shoulder condition, it was asymptomatic at the time

(continued . . .)

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, City first argues that the Board erred in permitting Mr. Streets to untimely file his protest. According to City, Mr. Streets had sixty days to file his protest

---

of the March 23, 2022 work injury. Pursuant to the standards set forth in *Gill* and *Moore*, the claim is compensable." However, we note that this Court recently explained that a

> preexisting condition itself does not become compensable, only the discrete new injury. *Moore* reaffirmed and expanded on the holding in *Gill* and therefore the holdings in both cases must be considered together. When read in unison, *Gill* and *Moore* do not render preexisting injuries compensable. Compensability is limited only to discrete new injuries and disabilities that manifest following the compensable injury.

*Blackhawk Mining, LLC v. Argabright*, __ W. Va. __, __ S.E.2d __, 2023 WL 3167476 (2023). Accordingly, to the extent the Board suggested that a preexisting, but asymptomatic, rotator cuff tear could be held compensable, we reiterate that a preexisting condition cannot become compensable. Only discrete new injuries are able to be held compensable. However, because this finding does not appear to form the basis of the Board's conclusions and because we find that the Board made sufficient findings to support holding the claim compensable, as set forth more fully above, we conclude that this finding is harmless error.

4

pursuant to West Virginia Code § 23-5-6a (2022). City argues that Mr. Streets did not attempt to file a protest until six weeks after the time frame had expired. Moreover, had Mr. Streets demonstrated good cause for the untimely filing, he could have been permitted 120 days under the statute. However, City claims that Mr. Streets' contention that his counsel was recently retained was not sufficient to demonstrate good cause. City states that there was no evidence that Mr. Streets had any difficulty securing counsel or that he ever attempted to secure counsel within the time frame to file a protest. As such, City argues that this Court should reverse the Board's order on the basis that the untimely filed protest should never have been permitted. We disagree.

We find that the Board did not abuse its discretion in permitting Mr. Smith to untimely file a protest to the claim administrator's order rejecting the claim. As City admits, the Board is afforded discretion in deciding whether to extend a deadline for filing. Pursuant to West Virginia Code § 23-5-6 (2021), "the Workers' Compensation Board of Review or court," as the case may be, shall consider whether the applicant was represented by counsel and whether timely and proper notice was actually received by the applicant or the applicant's representative" in determining whether good cause or excusable neglect in untimely filing a protest has been demonstrated. Here, Mr. Streets was not represented by counsel at the time the claim administrator rejected the claim. It appears, though, that he did attempt to work towards filing a protest, as his physician forwarded documents to the Board on his behalf. The Board issued a letter to the physician, indicating that it could not "acknowledge your protest" as the physician was not an authorized legal representative for Mr. Streets. The Board further indicated that if Mr. Streets desired to protest the claim administrator's order, he would have to provide an explanation showing good cause or excusable neglect for the late filing. Shortly thereafter, Mr. Streets retained counsel, who sought to untimely file the protest. Given the foregoing, we conclude that the Board did not abuse its discretion in permitting Mr. Streets to untimely file a protest, especially considering that it appears he was attempting to file a protest through his physician.

City next argues that the Board erred in reversing the claim administrator's order and holding the claim compensable for a left shoulder rotator cuff tear. According to City, the Board erred in disregarding the opinion of Dr. O'Brien on the basis that he had not had the opportunity to examine Mr. Streets in person. City avers that Dr. O'Brien was able to review the MRI, which was an internal examination and revealed degenerative conditions that one cannot possibly see by physically examining a patient. City contends that Dr. O'Brien properly found that Mr. Streets' rotator cuff tear preexisted the work-related injury, noting prior medical records indicating that he twice fell and injured his shoulder. Accordingly, City claims that the Board incorrectly found that Mr. Streets' rotator cuff tear did not preexist the claim simply because he was asymptomatic on the date of the alleged injury. City argues that the Board ignored the medical evidence, including Dr. O'Brien's report, the MRI, and the medical records predating the claim, all of which indicated that Mr. Streets' rotator cuff tear was degenerative and preexisted the claim.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Streets' left shoulder rotator cuff was compensable. The record indicates that Mr. Streets notified his employer of an injury and nearly immediately sought treatment, which eventually revealed a rotator cuff tear in his left shoulder. The evidence before the Board came down to the reports of two physicians: Dr. O'Brien and Dr. Smith. Dr. O'Brien opined that the MRI showed chronic, degenerative arthritis and atrophy of the tear, which indicated that the tear was preexisting and due to degenerative changes rather than an acute injury. In contrast, Dr. Smith opined that the tear was due to the work-related injury and would have been more atrophied if it were chronic and degenerative in nature. Ultimately, the Board found that Dr. Smith's report was more persuasive given that he had the opportunity to examine Mr. Streets both before and after the injury. Other than arguing that the opportunity to examine Mr. Streets in person was irrelevant to the diagnosis here, City fails to demonstrate that the Board was clearly wrong in finding Dr. Smith's report to be more persuasive. Instead, it simply asks us to reweigh the evidence in its favor. We decline to do so, and we further note that credibility determinations are within the discretion of the Board. *See Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

Moreover, while City argues that the Board glossed over Mr. Streets' history of preexisting conditions, we conclude that the Board adequately considered the evidence before it. Importantly, though City argues that Dr. O'Brien referenced medical records from a few months before the work-related injury which allegedly indicate that Mr. Streets "may" have torn his rotator cuff, those medical documents were never submitted before the Board. Based on the evidence that was submitted before it, the Board found that, while Mr. Streets had fallen and injured his shoulder prior to the work-related injury, he had full mobility and no pain by the time he returned for a follow-up with Dr. Smith, and he was able to return to work without restrictions. As such, the Board concluded that no diagnosis of a preexisting left shoulder rotator cuff tear had been established. These findings by the Board are sufficiently supported by the record such that we conclude that the Board was not clearly wrong in holding Mr. Streets' left shoulder rotator cuff tear compensable.

Accordingly, based on the foregoing, we affirm the Board's April 20, 2023, order.

Affirmed.

**ISSUED:** September 26, 2023

6

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen